**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

ROBERT UPTON,

        Plaintiff,

v.                                          No. CV 19-482 CG

ANDREW SAUL, Commissioner
of the Social Security Administration,

        Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Plaintiff Robert Upton's counsel's *Movant's Motion to Reconsider*, (the "Motion"), (Doc. 49), filed May 14, 2021. Neither Defendant Commissioner Andrew Saul nor Mr. Upton have filed a response to the Motion, and the time for doing so has passed. *See* D.N.M.LR-Civ. 7.4(a) ("A response must be served within fourteen (14) days after service of the motion.").

In his Motion, Mr. Upton's counsel petitions the Court to reconsider its *Order Granting Attorney Fees Pursuant to 42 U.S.C. 406(b)*, (Doc. 48), in which the Court awarded counsel $31,920.00 for legal services rendered before this Court, and instead award him attorney fees in the amount of $44.399.50. (Doc. 49 at 8). The Court, having reviewed the Motion and the relevant law, finds the Motion shall be **DENIED**.

## I.    Factual and Procedural Background

Mr. Upton initially filed applications for disability insurance benefits and supplemental security income benefits on February 13, 2015, which were denied. (Administrative Record "AR" 24, 89, 105). He then retained counsel on May 24, 2019, and instituted an action in this Court, seeking judicial review of the Commissioner's denial

of his application for disability insurance benefits and supplemental security income. (Doc. 1); (Doc. 19 at 1). On April 23, 2020, the Court granted Mr. Upton's request for relief, and remanded the case to the Commissioner for further proceedings. (Doc. 40).

On January 8, 2021, upon remand, the Commissioner determined Mr. Upton was disabled, entered a fully favorable decision, and awarded him past-due benefits in the amount of $201,598.00, with continuing monthly benefits of $2,545.00. (Doc. 44-1 at 1); (Doc. 44-2 at 2, 4). The Commissioner notified Mr. Upton that the Social Security Administration had withheld $50,399.50 from his total benefit payment pending an award of attorney fees pursuant to 42 U.S.C. § 406(b), which constituted twenty-five percent of total backpay benefits. (Doc. 44-2 at 4).

On April 16, 2021, the Court awarded Mr. Upton attorney fees in the amount of $31,920.00 pursuant to 42 U.S.C. § 406(b). (Doc. 48 at 6). Mr. Upton's counsel now requests that the Court reconsider its decision and award him the full amount he requested in his *Unopposed Petition for Determination of Attorney's Fees [Pursuant] to 42 USC § 406(B)*, (Doc. 44), for a total of $44.399.50. (Doc. 49 at 8). He argues that his extraordinary success in this case "was not a matter of luck," but was instead the result of "deliberate strategic decisions" and skillful briefing. (Doc. 49 at 4). He argues that his "thirteen years of exceptional training and experience" renders him "as good as far more experienced attorneys," and contends that his hourly rate of $973.67 is thus reasonable under the statute. *Id.* at 5.

## II.    Analysis

Courts may grant a motion to reconsider when (1) there is an intervening change in the controlling law, (2) new evidence previously unavailable becomes available, or (3) there exists a need to correct clear error or prevent manifest injustice. *Brumark Corp. v.*

*Samson Resources Corp.*, 57 F.3d 941, 948 (10th Cir.1995). Reconsideration is warranted where the court has clearly misapprehended the facts, a party's position, or the controlling law, but not in order to revisit issues already addressed in prior filings. *See Van Skiver v. United States*, 952 F.2d 1241, 1243 (10th Cir.1991); *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000).

Here, Mr. Upton's counsel's Motion does not rely on an intervening change of law, nor does he offer any previously unavailable evidence. (Doc. 49 at 1). Instead, he asks that the Court reconsider its decision "to avoid manifest injustice." *Id.*

When the Court considered Mr. Upton's counsel's *Unopposed Petition for Determination of Attorney's Fees [Pursuant] to 42 USC § 406(B)*, (Doc. 44), the Court acknowledged that counsel provided Mr. Upton with quality representation, stating that "counsel obtained a fully favorable decision for Mr. Upton upon remand. . . . [and] won Mr. Upton an award of $201,598.00 in back benefits, with continuing monthly benefits of $2,545.00." (Doc. 48 at 4). The Court then found Mr. Upton's counsel's 45.6 hours of representation were reasonable, given the precedent in this District and that the briefing in this case was more complicated than the typical Social Security case. *See* (Doc. 36); (Doc. 38).

However, the Court's role as an "independent check" does not end there. *Gisbrecht v. Barnhart*, 535 U.S. 789, 809 (2002) (stating that the controlling statute "instructs courts to review for reasonableness" fees yielded by contingent-fee agreements). The Court found that counsel's requested fee of $44,399.50 for 45.6 hours of work, which amounted to an hourly rate of $973.67, was at the higher end of this District's range. *See* (Doc. 48 at 5); *see, e.g.*, *Molina v. Saul*, 1:17-cv-1151 KRS, 2020 WL 7183569 (D.N.M. Dec. 7, 2020) (hourly rate of $294.12); *Reid v. Saul*, 1:16-cv-1104

SMV, 2020 WL 1049747 (D.N.M. Mar. 3, 2020) (hourly rate of $425.44). The Court

further found, despite the quality of counsel's representation, that the contingency fee

was disproportionately large in comparison to the amount of time counsel spent on the

case, and thus the Court downwardly adjusted counsel's hourly rate to $700. *See* (Doc.

48).

Despite counsel's contention that *Gisbrecht v. Barnhart* precludes courts from

"us[ing] the *Lodestar* method for determining whether attorney's fees are reasonable[,]"

the Tenth Circuit has stated that consideration of the hourly rate *is* permissible under

*Gisbrecht*:

> But *Gisbrecht* held only that the § 406(b) determination must begin with the
> contingent fee[;] it did not hold that considerations relevant to the lodestar, such as
> hours and hourly rate, were excluded from the subsequent test for
> reasonableness. Indeed, the [*Gisbrecht*] Court specifically noted that a record of
> the hours spent representing the claimant and a statement of the lawyer's normal
> hourly billing charge for noncontingent-fee cases may be required as an aid to the
> [district] court's assessment of the reasonableness of the fee yielded by the fee
> agreement.

*Russell v. Astrue*, 509 F. App'x 695, 697 (10th Cir. 2013) (quoting *Gisbrecht*, 535 U.S. at

808) (quotation marks omitted); *see* (Doc. 49 at 3). The Court's analysis of the

reasonableness of counsel's fees, with reference to his effective hourly rate, was thus

proper.

Moreover, while the Court recognizes that counsel won Mr. Upton an award of

$201,598.00 in back benefits with relatively high continuing monthly benefits of

$2,545.00, the value of this award resulted solely from Mr. Upton's underlying eligibility

for benefits—namely, his earnings record. (Doc. 44-2 at 2, 4); *see Rodriquez v. Bowen*,

865 F.2d 739, 747 (6th Cir. 1989) ("[a]lthough . . . there are cases where the lawyer's

unusual skill or diligence wins the case, typically the number of hours that are required to

prosecute an appeal from the Secretary's determination will not vary greatly and will bear little if any relationship to the results achieved."). In other words, here, as in other Social Security cases, counsel's quality of representation affected the success or failure of the case, but it did not affect the value of the award.

Further, while counsel was not responsible for any meaningful delay and does not stand to "profit from the accumulation of benefits during the pendency of the case in court" as a result of his own inaction, he is in the analogous situation of gaining a windfall from a previously high-earning claimant. *See Gisbrecht*, 535 U.S. at 808. Nevertheless, the Court found it reasonable to award counsel an hourly fee of $700.00 instead of a more typical rate of $300.00 or $400.00, given the primacy of lawful attorney-client fee agreements. (Doc. 48 at 5); *Gisbrecht*, 535 U.S. at 808; *see*, *e.g.*, *Molina*, 2020 WL 7183569 (hourly rate of $294.12); *Reid*, 2020 WL 1049747 (hourly rate of $425.44). The Court's downward adjustment of counsel's fees was thus proper. *Gisbrecht*, 535 U.S. at 808 ("[i]f the benefits are large in comparison to the amount of time counsel spent on the case, a downward adjustment is . . . in order.").

Next, Mr. Upton's counsel argues that this Court should award him an hourly rate of $973.67 because it awarded a less experienced attorney an hourly rate of $1,025 in *Baca v. Saul*. (Doc. 49 at 6). Indeed, in *Baca v. Saul*, this Court awarded the plaintiff's counsel an hourly rate of $1,025.00. *Baca v. Saul*, 1:17-cv-449 CG, 2020 WL 871547, at *2 (D.N.M. Feb. 21, 2020) (Doc. 24 at 4). However, there, the attorney who requested attorney fees did so on behalf of another more senior attorney at her firm, who at that time had thirty-three years of experience and had worked all the hours reported for that case. *Id.* (Doc. 22-1 at 19). The Court found such an hourly rate warranted given the experience of the attorney who had worked on the case. *Baca*, 2020 WL 871547, at *2;

*see also Chavez v. Saul*, 1:20-cv-210 CG, 2021 WL 1978611, at *2 (D.N.M. May 18, 2021) (awarding fees where two different attorneys of the same firm worked on a case under different federal index numbers). Mr. Upton's counsel's reliance on *Baca v. Saul* is thus inapposite.

Finally, counsel argues that the Court's prior Order effectively requires counsel to work "seventeen more years[] before his twenty-five percent contingency fee agreement is approved." (Doc. 49 at 6). This Order, as well as the Court's previous Order, is specific to the facts of this case, and thus does not preclude counsel from seeking a higher hourly rate in the future, upon a showing of reasonableness in the initial motion, based on the particular facts of that case. Therefore, given the foregoing, the Court finds that Mr. Upton's counsel has failed to show any clear error or manifest injustice in the Court's prior decision.

## III. Conclusion

**IT IS THEREFORE ORDERED** that *Movant's Motion to Reconsider*, (Doc. 49), is **DENIED**.

**IT IS SO ORDERED**.

_____
THE HONORABLE CARMEN E. GARZA
CHIEF UNITED STATES MAGISTRATE JUDGE